IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SHANNON KRAESE,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        CASE NO. CV417-166
                                   )
JIALIANG QI and GD TOUR INC.,      )
                                   )
        Defendants.                )
_____   )

## O R D E R

Before the Court is Defendants' Motion to Limit Testimony of
Dr. Stanley Dennison.[1] (Doc. 69.) Plaintiff opposes Defendants'
motion. (Doc. 70.) For the following reasons, Defendants' motion
(Doc. 69) is **GRANTED**.

### BACKGROUND

This case arises from a motor-vehicle accident in which a
bus, driven by Defendant Jialiang Qi, collided with the rear of
another vehicle in May 2016. (Doc. 49, Attach. 5 at ¶¶ 1-2.) At
the time of the accident, Defendant Qi was employed by Defendant
GD Tour Inc. (Id. at ¶ 10.) Plaintiff, a passenger on the bus,
alleges that the accident caused her to suffer injuries to her
neck and back. (Doc. 14 at 3.) Following the accident, several

_____

[1] Defendants' motion is also a brief in opposition to Plaintiff's
motion for leave to depose Dr. Dennison for trial. (Doc. 69 at 1.)
However, the Magistrate Judge denied Plaintiff's request to depose
Dr. Dennison for trial (Doc. 73), and, therefore, the Court will
only address Defendant's request to limit Dr. Dennison's
testimony.

physicians treated Plaintiff for neck and back pain, including Dr. Stanley Dennison, an anesthesiologist and pain management specialist. (Doc. 69, Attach. 3 at 11-12.)

Dr. Dennison began treating Plaintiff in 2014 after a prior motor-vehicle accident. (Doc. 70, Attach. 1 at 4.) After the 2014 accident, Plaintiff complained of pain in her neck, back, shoulders, and left knee. (Id.) Because of her pain, Plaintiff was referred for an MRI of her cervical spine ("2014 MRI"). (Id. at 5.) Dr. Dennison testified that the radiologist's report regarding Plaintiff's 2014 MRI revealed a disc bulge at her C6-C7 disc.[2] (Id. at 6.)

Approximately two years later, Plaintiff was involved in the subject accident and returned to Dr. Dennison for treatment. (Id. at 4.) After the subject accident, Plaintiff complained of increased pain in her neck, back, shoulders, and left knee and complained of new pain in her right wrist, left ankle, left shoulder, and left arm. (Id. at 4, 6.) Dr. Dennison referred Plaintiff for another MRI of her cervical spine ("2016 MRI"). (Id. at 5.) Dr. Dennison testified that the radiologist's report regarding Plaintiff's 2016 MRI revealed a "broad-based disc herniation indenting the anterior thecal sac" at Plaintiff's C6-

---

[2] Dr. Dennison did not have the 2014 MRI film or the 2016 MRI film with him at his deposition. (Doc. 70, Attach. 1 at 17.) Rather than refer to the films, Dr. Dennison based his testimony about the MRIs on radiologists' reports interpreting the results of the MRIs. (Id.)

C7 disc. (Id. at 6.) In June 2016, Dr. Dennison performed a percutaneous disc decompression at Plaintiff's C6-C7 disc. (Id.) During his deposition, Dr. Dennison opined that he performed the cervical decompression at Plaintiff's C6-C7 disc because of the subject accident's effects on Plaintiff. (Id.) Dr. Dennison based his causation opinion on Plaintiff "complaining of pain" and the differences between the results of Plaintiff's 2014 MRI and the results of her 2016 MRI. (Id.)

Although the deadline to disclose testifying experts was January 9, 2019 (Doc. 39), Plaintiff did not identify Dr. Dennison as an expert witness. Further, Plaintiff did not provide a written report or summary of Dr. Dennison's opinions. Plaintiff's sole disclosure regarding expert witnesses came in her response to Defendants' first interrogatories, in which she stated that she "may call on [her] physicians for expert opinions concerning Plaintiff's rendered treatment." (Doc. 69, Attach. 2 at 3.)

## ANALYSIS

Defendants move the Court to limit the testimony of Dr. Dennison. (Doc. 69.) Defendants agree that Dr. Dennison, as Plaintiff's treating physician, can provide factual testimony concerning his diagnosis and treatment of Plaintiff. (Id. at 10.) However, Defendants seek to prevent Dr. Dennison from providing opinion testimony regarding the cause of Plaintiff's C6-C7 disc injury and regarding the differences between Plaintiff's 2014 MRI

3

results and 2016 MRI results. (Id. at 4-5.) Defendants argue that
Dr. Dennison's opinions on these matters exceed the scope of
permissible lay testimony. (Id.) Defendants argue that, because
Dr. Dennison's opinions constitute expert testimony, his opinions
should be excluded for two reasons: (1) Plaintiff failed to comply
with the expert disclosure requirements of Federal Rule of Civil
Procedure 26; and (2) Dr. Dennison's opinions fail to meet the
reliability standards established in Daubert v. Merrell Dow
Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed.
2d 469 (1993). (Id. at 8, 18.)

In response, Plaintiff avers that Dr. Dennison properly
limited his testimony to facts about his care and treatment of
Plaintiff and, therefore, Plaintiff was not required to comply
with Rule 26's disclosure requirements.[3] (Doc. 70 at 3.) Plaintiff,
however, does not discuss whether Dr. Dennison's opinions meet the
reliability standards established in Daubert. The Court will
address whether Dr. Dennison, as Plaintiff's treating physician,

---

[3] Plaintiff, in her response, also argues that Defendants' motion
should be denied as untimely. (Doc. 70 at 2-3.) Specifically,
Plaintiff contends that motions to exclude expert witnesses were
due March 22, 2019 and that, because Defendants' current motion is
a motion to exclude Dr. Dennison, it was due on March 22nd. (Id.)
The Court disagrees. As noted by the Magistrate Judge, Defendants'
current motion is construed as a motion in limine. (Doc. 73 at 1.)
As such, Defendants' motion is timely. See S.D. Ga. L.R. 7.4
("Unless otherwise directed, motions in limine shall be filed no
later than five (5) days prior to the pretrial conference, if
practicable; otherwise, such motions may be filed up to the time
of trial.").

gave expert testimony and whether Plaintiff's failure to comply with Rule 26 warrants exclusion of Dr. Dennison's testimony.

I.   WHETHER DR. DENNISON PROFFERED EXPERT OPINIONS

To begin, Defendants argue that Dr. Dennison provided expert testimony during his deposition, and, therefore, Plaintiff was required to disclose Dr. Dennison as an expert under Rule 26. (Doc. 69 at 8.) Specifically, Defendants aver that Dr. Dennison's opinion regarding the cause of Plaintiff's cervical spine injury exceeds the scope of permissible lay testimony by a treating physician. (Doc. 69 at 10.) In contrast, Plaintiff argues that Dr. Dennison, as Plaintiff's treating physician, can opine on the cause of her injuries because this testimony relates to his treatment of Plaintiff and, therefore, is not considered expert testimony. (Doc. 70 at 3, 5.)

"[T]he designation of a treating physician as a fact versus an expert witness depends on the nature of the testimony the witness intends to offer." Patrick v. Henry Cty., No. 1:13-CV-01344-RWS, 2016 WL 2961103, at *2 (N.D. Ga. May 23, 2016). "Non-expert (or lay) witnesses may only testify to opinions or inferences 'which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.' " United States v.

5

_Henderson_, 409 F.3d 1293, 1300 (11th Cir. 2005) (quoting Fed. R. Evid. 701). In comparison, Rule 702 "allows 'a witness qualified as an expert by knowledge, skill, experience, training, or education' to testify in the form of an opinion based on 'scientific, technical, or other specialized knowledge,' so long as certain reliability requirements are satisfied." _Eberhart v. Novartis Pharms. Corp._, 867 F. Supp. 2d 1241, 1251 (N.D. Ga. 2011) (quoting Fed. R. Evid. 702).

   " 'A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party.' " _Williams v. Mast Biosurgery USA, Inc._, 644 F.3d 1312, 1317 (11th Cir. 2011) (quoting _Davoll v. Webb_, 194 F.3d 1116, 1138 (10th Cir. 1999)). However, "once the treating physician expresses an opinion unrelated to treatment which is 'based on scientific, technical, or other specialized knowledge,' that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by _Daubert_." _Wilson v. Taser Int'l, Inc._, 303 F. App'x 708, 712 (11th Cir. 2008) (citing _Henderson_, 409 F.3d at 1300) ((finding a treating physician's opinion on causation was expert testimony because "his opinion regarding the cause of [plaintiff's] injuries was not needed to explain his decision making process, nor did it pertain to [plaintiff's] treatment"). In other words, "when a treating

physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony, and it must comply with the requirements of Rule 702 and the strictures of Daubert." Williams, 644 F.3d at 1317-18 (finding that the identity of a foreign substance removed from the plaintiff's body "was not necessary for her treatment" and, therefore, was not admissible as lay testimony by a treating physician); Henderson, 409 F.3d at 1300 ("[The treating physician's] diagnosis of the injury itself . . . would be permissible lay testimony, but her statement about the cause of the injury was . . . a 'hypothesis' " because "[she] did not need to determine how [plaintiff] was injured to treat him in this case.").

The Court finds that Dr. Dennison's testimony exceeds the scope of permissible lay testimony by a treating physician. During Dr. Dennison's deposition, the following exchange occurred:

> Q: Doctor, in your opinion, was the cervical depression at C6-C7 performed as a result of the May 2016 bus crash?
>
> A: Yes.
>
> Q: Doctor, and on what basis are you making that finding that the cervical decompression at C6-C7 was related to the May 2016 bus crash?
>
> A: Based on—on the patient complaining of pain as well as the MRI findings were different.

(Doc. 70, Attach. 1 at 6.) In this exchange, Dr. Dennison opined that the subject accident caused the injury to Plaintiff's C6-C7

7

disc. However, neither Plaintiff nor Dr. Dennison demonstrated that Dr. Dennison needed to determine the cause of Plaintiff's injury to diagnose or treat her injury. From the Court's perspective, the cause of Plaintiff's injury did not affect Dr. Dennison's diagnosis of Plaintiff's injury or Dr. Dennison's decision to perform the cervical decompression. Accordingly, Dr. Dennison's testimony about his "diagnosis of the injury itself . . . would be permissible lay testimony, but [his] statement about the cause of the injury was . . . a hypothesis" because "[he] did not need to determine how [Plaintiff] was injured to treat [her] in this case." Henderson, 409 F.3d at 1300 (internal quotations omitted). As a result, the Court finds that Dr. Dennison's opinions on causation qualify as expert testimony and, thus, Plaintiff was required to comply with the disclosure requirements of Federal Rule of Civil Procedure 26. It is undisputed that Plaintiff failed to comply with Rule 26. (Doc. 70 at 8.)

## II.   WHETHER PLAINTIFF'S FAILURE TO COMPLY WITH RULE 26'S DISCLOSURE REQUIREMENTS WAS HARMLESS

Next, Defendants argue that Plaintiff's failure to comply with the disclosure requirements of Federal Rule of Civil Procedure 26(a)(2)(B) warrants the exclusion of Dr. Dennison's expert testimony. (Doc. 69 at 8.) In response, Plaintiff argues that Rule 26(a)(2)(B) does not apply to Dr. Dennison because he is not a retained expert; rather, Plaintiff contends that Rule 26(a)(2)(C) applies to Dr. Dennison as her treating physician. (Doc. 70 at 8.)

8

"[A] party must disclose to other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Rule 26(a)(2)(B) dictates that "this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." The written report must contain:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the data or other information considered by the witness in forming them;

(iii)   any exhibits that will be used to summarize or support them;

(iv)    the witness's qualifications, including a list of all publications authored in the previous ten years;

(v)     a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

In comparison, Rule 26(a)(2)(C) establishes a separate category "for witnesses who will testify as fact witnesses as well as offer expert opinions, a category into which treating physician experts often fall." Rangel v. Anderson, 202 F. Supp. 3d 1361, 1364 (S.D. Ga. 2016). Although witnesses under Rule 26(a)(2)(C)

"need not provide the report required by Rule 26(a)(2)(B), they are still required to disclose the subject(s) of their expert testimony, as well as a summary of the facts and opinions on which they are expected to testify." Rangel, 202 F. Supp. 3d at 1365.

As discussed above, Dr. Dennison proffered expert testimony during his deposition. Therefore, Plaintiff was required to disclose Dr. Dennison as an expert witness under Rule 26. However, the Court need not decide whether Plaintiff was required to disclose Dr. Dennison in accordance with Rule 26(a)(2)(B) or (C) because Plaintiff concedes that she failed to comply with even the lesser requirements of Rule 26(a)(2)(C).[4] (Doc. 70 at 8.) Rather, Plaintiff argues that her failure to comply with Rule 26's disclosure requirements was harmless.

---

[4] The Court notes that Plaintiff's only disclosure concerning expert witnesses came in response to Defendants' first interrogatories, in which Plaintiff stated that she "may call on [her] physicians for expert opinions concerning Plaintiff's rendered treatment." (Doc. 69, Attach. 2 at 3.) In the Court's view, this statement does not satisfy Rule 26's disclosure requirements because it plainly fails to identify Dr. Dennison by name, indicate what opinion he will offer, or indicate on what facts he will base his opinion. See Kondragunta v. Ace Doran Hauling & Rigging Co., No. 1:11-cv-01094-JEC, 2013 WL 1189493, at *6 (N.D. Ga. Mar. 21, 2013) (concluding that plaintiff did not comply with Rule 26(a)(2)(C) because "[t]he reader of plaintiff's disclosure has no idea what opinion the doctor will offer or on what facts the doctor will base that opinion."); Martin v. Wal-Mart Stores East, LP., CV418-197, 2020 WL 5949222, at *2-3 (S.D. Ga. Oct. 7, 2020) (concluding that plaintiff violated Rule 26's disclosure requirements because "[p]laintiff's disclosure state[d] only the physicians were going to testify to treatment and 'causation.' ").

"A court may exclude affidavits or testimony from a witness when 'a party fails to provide information or identify a witness as required by Rule 26(a).' " Kondragunta v. Ace Doran Hauling & Rigging Co., No. 1:11-cv-01094-JEC, 2013 WL 1189493, at *7 (N.D. Ga. Mar. 21, 2013) (citing Fed. R. Civ. P. 37(c)(1)). " 'However, a court does not have to impose those sanctions if it believes the failure was substantially justified or is harmless.' " Rangel, 202 F. Supp. 3d at 1366 (citing Kondragunta, 2013 WL 1189493, at *7). When determining whether an insufficient disclosure was harmless, courts have applied a five-factor test. Rangel, 202 F. Supp. 3d at 1366 (citing Kondragunta, 2013 WL 1189493, at *7); Bruce v. Classic Carrier, Inc., No. 1:11-cv-01472-JEC-JCF, 2012 WL 12835705, at *3 (N.D. Ga. Oct. 31, 2012). The five factors are:

(1)   the surprise to the party against whom the evidence would be offered;

(2)   the ability of that party to cure the surprise;

(3)   the extent to which allowing the evidence would disrupt the trial;

(4)   the importance of the evidence; and

(5)   the nondisclosing party's explanation for its failure to disclose the evidence.

Rangel, 202 F. Supp. 3d at 1366 (citing Cambridge Univ. Press v. Becker, 1:08-cv-1425-ODE, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)); Abdulla v. Klosinski, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012), aff'd, 523 F. App'x 580 (11th Cir. 2013).

11

In the Court's view, Plaintiff's insufficient disclosure was not harmless. First, "[i]t is not enough for Plaintiff to argue that Defendant should not be surprised by Dr. [Dennison's] expert opinion because he was listed as a treating physician." Rangel v. Anderson, 202 F. Supp. 3d 1361, 1366 (S.D. Ga. 2016). Although Plaintiff, in her initial disclosures, indicated that Dr. Dennison was a "person[] likely to have discoverable information . . ." (Doc. 69, Attach. 1 at 2), Plaintiff's only disclosure regarding expert witnesses stated that she "may call on [her] physicians for expert opinions concerning Plaintiff's rendered treatment." (Doc. 69, Attach. 2 at 3). With this statement, Plaintiff failed to identify Dr. Dennison by name, indicate what opinion he will offer, or indicate on what facts he will base his opinion. Without at least a summary of Dr. Dennison's opinions or expected testimony, Defendants' counsel could not have fully prepared to depose Dr. Dennison. See Rangel, 202 F. Supp. 3d at 1367 ("[W]ith no notice of Dr. Karl's opinions, much less the subject matter of them, Defendant could not have prepared to depose Dr. Karl on those issues."); Walter Int'l Prods., Inc. v. Salinas, 650 F.3d 1402, 1413 (11th Cir. 2011) ("[I]t is harmful to deprive opposing counsel of the expert's report before his deposition. The district court did not abuse its discretion when it excluded the testimony of [the] experts."). "This surprise defeats the purpose of Rule 26's

expert disclosure requirements." Rangel, 202 F. Supp. 3d at 1367. Accordingly, the first factor weighs in favor of exclusion.

As to the second factor, the Court finds that Defendants' "had the ability to complain, and thereby cure this surprise, prior to the expiration of expert discovery, by advising Plaintiff that [her] disclosures did not comply with the rule and by requesting more specific disclosures." Kondragunta, 2013 WL 1189493, at *6. Plaintiff deposed Dr. Dennison on July 19, 2018 (Doc. 69, Attach. 3 at 2), and Plaintiff's expert disclosures were due January 16, 2019 (Doc. 52 at 2). Yet, Defendants waited until May 1, 2020, to complain about Plaintiff's failure to disclose Dr. Dennison's opinions. (Doc. 69.) Defendants essentially "laid in wait, hoping that [P]laintiff's non-compliance would doom [her] ability to offer any expert testimony." Kondragunta, 2013 WL 1189493, at *6. Because Defendants did not attempt to cure their surprise until almost two years after Dr. Dennison's deposition, the second factor weighs against exclusion.

Third, allowing Dr. Dennison to proffer expert testimony could disrupt litigation in this case. Although the Court has not yet set a trial date, the discovery deadline expired two years ago, and the Magistrate Judge has already denied Plaintiff the opportunity to file untimely expert disclosures. (Doc. 52.) Additionally, if the Court permitted Plaintiff to file a summary of Dr. Dennison's expert opinions at this time, Dr. Dennison "could

change his opinions and his basis for them in order to skirt the Defendants' <u>Daubert</u> challenge." <u>Rangel</u>, 202 F. Supp. 3d at 1367; <u>Martin v. Wal-Mart Stores East, LP.</u>, No. CV418-197, 2020 WL 5949222, at *4 (S.D. Ga. Oct. 7, 2020) ("[A] proper curative disclosure would be likely to interrupt the course of this case, which has long since proceeded past the close of an already extended discovery period."); <u>Thompson v. United States</u>, No. 4:17-cv-63, 2019 WL 149553, at *11 (S.D. Ga. Jan. 9, 2019) ("To permit an expert disclosure at this late stage as to a witness known to [p]laintiffs at the outset would undermine both sides' interest in a prompt resolution and subvert this Court's scheduling orders, not to mention the Federal Rules of Civil Procedure."). Thus, the third factor weighs in favor of exclusion.

As to the fourth factor, the importance of Dr. Dennison's expert opinions, Plaintiff has not demonstrated that the exclusion of Dr. Dennison's expert opinions would prejudice her at trial. <u>See</u> <u>Mitchell v. Ford Motor Co.</u>, 318 F. App'x 821, 824 (11th Cir. 2009) ("The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party."). In the Court's view, Dr. Dennison's testimony on causation and the differences in Plaintiff's MRIs is not so important as to excuse Plaintiff's lack of disclosure. Notably, Dr. Dennison's testimony will not be excluded in its entirety at trial. Defendants agree that Dr. Dennison may still testify about

14

his treatment and diagnosis of Plaintiff. Further, Plaintiff could still prove causation using her medical records and other witnesses. See Rangel, 202 F. Supp. 3d at 1367 (". . . Plaintiff could provide evidence of causation using her medical records and other witnesses."). Accordingly, the fourth factor weighs in favor of exclusion.

Finally, Plaintiff has not offered any explanation for her failure to disclose Dr. Dennison as an expert. Plaintiff merely acknowledges her failure and asks that the Court find it was harmless. Moreover, even after being put on notice of her failure to disclose, Plaintiff has still failed to provide a summary of Dr. Dennison's opinions. See Martin, 2020 WL 5949222, at *4 (finding plaintiff's failure to disclose expert testimony was not harmless, in part, "because plaintiff has still failed to state the opinions that her proposed experts are likely to make."). Based on Plaintiff's blatant disregard for Rule 26's requirements, the fifth factor weighs heavily in favor of excluding Dr. Dennison's expert opinions.

The Court does "not commend either party on its efforts to resolve this dispute." Griffith v. Gen. Motors Corp., 303 F.3d 1276, 1283 (11th Cir. 2002) (criticizing plaintiff for failing to comply with Rule 26's disclosure requirements and criticizing defendant for "allow[ing] this impasse to continue well beyond the point of good faith efforts to resolve the issue without court

intervention, never moving for an order requiring any more detailed response under Rule 26."). Although Defendants waited an unreasonable amount of time to complain about Plaintiff's lack of disclosure, Plaintiff has not provided any explanation for her noncompliance with Rule 26 and has still not provided a written report or summary of Dr. Dennison's opinions. Considering the factors above, the Court finds that Plaintiff's failure to disclose Dr. Dennison in accordance with Rule 26 was not harmless. As a result, Rules 26 and 37 compel the Court to exclude Dr. Dennison's expert testimony on causation and Defendants' motion (Doc. 69) is **GRANTED**. Consequently, the Court limits Dr. Dennison's testimony to only the facts and observations he obtained firsthand during the course of his treatment and diagnosis of Plaintiff.

III. <u>WHETHER DR. DENNISON'S OPINION SATISFY THE STANDARDS ESTABLISHED IN DAUBERT AND RULE 702</u>

Defendants also argue that the Court should exclude Dr. Dennison's opinion on causation because his testimony fails to meet the strictures established in Rule 702 and <u>Daubert</u>. (Doc. 69 at 16.) As previously mentioned, Dr. Dennison based his opinion that the subject accident caused Plaintiff's cervical spine injury, in part, on the differences he observed between Plaintiff's 2014 MRI results and her 2016 MRI results. (Doc. 70, Attach. 1 at 6.) In light of the fact that Dr. Dennison based his causation opinion on his observation of differences between Plaintiff's 2014 and 2016 MRI results, Dr. Dennison's testimony about those

16

differences is, like his testimony about causation, expert testimony. As such, his testimony is subject to the standards established in Rule 702 and <u>Daubert</u>. Defendants argue that Dr. Dennison's testimony fails to meet those standards because (1) Dr. Dennison, as a pain management specialist, is not qualified to opine on differences between Plaintiff's 2014 and 2016 MRI results; and (2) Dr. Dennison did not apply reliable principles and methods when opining on Plaintiff's MRI results. (Doc. 69 at 18-19.)

The admission of expert testimony is controlled by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

The trial judge is assigned "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d 469 (1993). "As the Supreme Court made abundantly clear in <u>Daubert</u>, Rule 702 compels district courts to perform the critical gatekeeping function

concerning the admissibility of expert scientific evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation omitted). This gatekeeping function equally applies to the admissibility of expert technical evidence. Id.; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49, 119 S. Ct. 1167, 1174-75, 143 L. Ed. 2d 238 (1999).

The Eleventh Circuit Court of Appeals has explained that district courts fulfill the gatekeeping function by engaging in a three-part inquiry, considering whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as to be determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific . . . expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260. "The proponent of expert testimony always bears 'the burden to show that his expert is qualified to testify competently regarding the matters he intend[ed] to address; [] the methodology by which the expert reach[ed] his conclusions is sufficiently reliable; and [] the testimony assists the trier of fact.' " United States v. Fraizer, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002)).

In her response, Plaintiff does not specifically address Defendants' arguments concerning Daubert; instead, Plaintiff argued generally that Dr. Dennison did not offer any expert

testimony because Dr. Dennison's testimony concerned his "evaluation and treatment of Plaintiff." (Doc. 70 at 3, 6.) However, as previously discussed, Dr. Dennison's opinions concerning the cause of Plaintiff's cervical spine injury is expert testimony. As such, Dr. Dennison's causation opinion and his basis for reaching his causation opinion—that is, the differences he observed between Plaintiff's MRI results—must satisfy the standards set forth in <u>Daubert</u>.

Because Plaintiff has plainly failed to argue or discuss whether Dr. Dennison's opinions meet the standards established in <u>Daubert</u>, the Court need not undertake an extensive <u>Daubert</u> analysis. Plaintiff has not made any effort to lay the foundation for the admission of Dr. Dennison's opinions. Plaintiff's failure to "show that [her] expert is qualified to testify competently regarding the matters he intend[ed] to address . . . ." warrants the exclusion of Dr. Dennison's opinions to the extent they exceed the scope of his care and treatment of Plaintiff. See <u>Jones v. Anderson</u>, No. 5:17-cv-77, 2018 WL 2717221, at *10 (S.D. Ga. June 6, 2018) (excluding many of plaintiff's expert's opinions because plaintiff, "despite having filed two briefs, [] failed to make the specific showings necessary to lay the requisite foundation for [his] expert['s] opinions"). It is not the Court's burden to sift through the record and cobble together support for Dr. Dennison's opinions. <u>Cooke ex rel. Estate of Tessier v. Sheriff of Monroe</u>

Cty., Fla., 402 F.3d 1092, 1113 (11th Cir. 2005) ("Again, we stress that it was [the proponent of the expert's] burden—not that of the trial court—to lay the foundation for admission of [the expert's] testimony."). Accordingly, Dr. Dennison's testimony concerning the cause of Plaintiff's cervical spine injury and any differences Dr. Dennison observed between Plaintiff's 2014 MRI results and Plaintiff's 2016 MRI results which he believes support his causation opinion is excluded.

CONCLUSION

For the foregoing reasons, Defendants' motion (Doc. 69) is **GRANTED**. As a result, the Court limits Dr. Dennison's testimony to only the facts of this case concerning his treatment and diagnosis of Plaintiff.

SO ORDERED this __18th__ day of February 2021.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA